RALPH SBROGNA & others *vs.* WORCESTER STAMPED METAL COMPANY & others.

Suffolk. January 3, 1968. — March 6, 1968.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Fiduciary. Trust,* Constructive trust. *Unjust Enrichment. Contract,* Of employment, Termination, Pension plan. *Pension.*

Where, in furtherance of a pension plan adopted as a result of collective bargaining between an employer and a union, the employer entered into a group annuity contract with an insurance company providing that, in the event of a permitted discontinuance of such contract by the employer, purchased annuities then in force should remain in force "regardless of continued employment," that if the employment of an employee terminated before certain times, including the date of a discontinuance of the contract, annuities purchased for him should be cancelled upon termination of the employment, and that upon such a

cancellation premiums paid for his annuity should be applied against other premiums payable, no fiduciary duty of the employer to employees precluded the employer from discharging certain employees without prior discontinuance of the contract, thereby bringing about cancellation of their annuities, nor was there any unjust enrichment of the employer, or occasion for imposing a constructive trust on the employer, by reason of such discharge.  [20]

Where a pension plan group annuity contract entered into between an employer and an insurance company provided that the determination of the employer respecting "the fact and time of . . . termination of employment of any employee" should be "conclusive and binding upon all persons," and certain employees had not been hired for any definite time and could be discharged by the employer at any time, discharges of them constituted "termination" of their employment within a provision of the annuity contract that their annuities should be "cancelled as of the date of . . . termination of employment," and also came within a statement in a pension plan booklet that no benefits should be payable to "an employee who, by reason of death or otherwise, terminates employment prior to retirement."  [20-21]

BILL IN EQUITY filed in the Superior Court on December 9, 1965.

Demurrers to the bill were heard by *Tomasello*, J.

*Warren H. Pyle* (*E. David Wanger* with him) for the plaintiffs.

*Julius Kirle* for Worcester Stamped Metal Company.

*Brian E. Concannon* (*Thomas J. McArdle* with him) for Aetna Life Insurance Company.

REARDON, J.  This is a bill in equity against the Worcester Stamped Metal Company (Worcester) and Aetna Life Insurance Company (Aetna) to recover certain annuity benefits to which the plaintiffs state they are entitled.  The plaintiffs appeal from interlocutory decrees sustaining the demurrers of Worcester and Aetna, from the denial of the trial judge of their motion for leave to amend the bill of complaint, and from a final decree dismissing the bill.

The allegations of the bill can be briefly summarized.  The plaintiffs were employees of Worcester and were represented by a union.  As a result of collective bargaining in 1951 Worcester and the union entered into an agreement which provided for the establishment of a pension plan.  Thereafter, also in 1951, Worcester entered into a group annuity contract (contract) with Aetna, the entire cost of

which was to be paid by Worcester, which is still in existence. The latest collective bargaining agreement covered a period ending January 17, 1964. On April 27, 1964, all of the plaintiffs save Beatrice Amado went on strike because of the failure of Worcester and the union to come together on a new bargaining agreement. On or about December 15, 1964, Worcester discharged all the plaintiffs except Beatrice Amado on the ground that their jobs had been "permanently filled and/or abolished" and all annuities purchased for the plaintiffs between 1951 and 1964 were cancelled. Attached to the bill of complaint were copies of the most recent collective bargaining agreement, a "Supplemental Agreement" dated October 23, 1951, which described the pension plan, and the contract between Worcester and Aetna.

The contract bound Aetna to pay an annuity to each employee of Worcester "who reaches his Annuity Commencement Date while covered hereunder." This date was defined as the employee's "Normal Retirement Date," which was to be the latest of (1) the first day of the calendar month coinciding with or next following his sixty-fifth birthday; (2) the first day of the calendar month coinciding with or next following the date on which he completes fifteen years of continuous service with Worcester; and (3) November 1, 1951.

The contract further provided that if an employee's employment with Worcester terminated before the earliest of (1) the annuity commencement date; (2) the normal retirement date; (3) the date of discontinuance of the annuity contract; and (4) the date on which an employee has both completed at least fifteen years of continuous service with Worcester and has reached his sixty-fifth birthday, then "all Retirement Annuities purchased for him shall be cancelled as of the date of such termination of employment."

Another section of the contract made the determination and findings of Worcester with respect to "the fact and time of the commencement, duration, and termination of em-

ployment of any employee . . . conclusive and binding upon all persons for the purposes of this contract."

A pension plan booklet made part of the "Supplemental Agreement" stated, "No benefits are payable to an employee who, by reason of death or otherwise, terminates employment prior to retirement."

The last contract provision to be noted permitted Worcester on advance written notice to Aetna to discontinue the contract, in which event "all Retirement Annuities purchased prior to discontinuance and in force at discontinuance shall remain in force, regardless of continued employment by the employer . . . ."

1. The plaintiffs first argue that Worcester had a fiduciary duty to them, and that if Worcester had discontinued the annuity contract prior to the terminations their annuities would have been preserved. There is no warrant to hold that a constructive trust is to be imposed on Worcester. The plaintiffs and Worcester were employees and employer. The relationship was strictly one of business having no fiduciary attributes. See *Broomfield* v. *Kosow*, 349 Mass. 749, 758, and cases cited. It is not possible to weave the fabric of a constructive trust in the circumstances of this case. Cases cited by the plaintiffs are not in point.

2. Worcester is charged also with unjustly enriching itself by cancelling the plaintiffs' annuity benefits. However, the contract provides that if annuities purchased for an employee are cancelled, premiums paid on such annuities shall be applied against premiums "then due or next thereafter becoming due" under the contract. Neither Worcester nor Aetna is to retain benefits. Worcester's actions have been entirely consonant with the contractual provisions controlling the pension plan. There is no case of unjust enrichment here. See *Dennett* v. *Perkins*, 214 Mass. 449; *General Exch. Ins. Corp.* v. *Driscoll*, 315 Mass. 360, 363; *Suncook Mills* v. *United States*, 44 F. Supp. 744, 746-747 (D. C. Mass.).

3. The plaintiffs also argue that their respective discharges were not terminations within the meaning of the Aetna con-

tract and thus that their annuities were not cancelled. With this theory we cannot agree. On the date when the plaintiffs were discharged there was no collective bargaining contract in existence. Had there been one, it is far from clear on the allegations of this bill that the plaintiffs would have been in a position to allege a breach of that contract. See *Karcz* v. *Luther Mfg. Co.* 338 Mass. 313, 318–322, and cases cited.

As it stood the plaintiffs were not employed for any definite time. They could at any point leave Worcester. Worcester at any time could discharge any or all of them. See *Askinas* v. *Westinghouse Elec. Corp.* 330 Mass. 103, 106.

Nor do we agree that the discharges were not "terminations" within the meaning of the annuity contract and the pension handbook. In our view termination by discharge falls clearly within the language of the handbook cutting off benefits to those employees terminating employment "by reason of death or otherwise." In any event, reference to the contract language expressed earlier makes it apparent that Worcester determines the fact and time of the termination of the employees which is "conclusive and binding" on all parties concerned. See *Carpenter* v. *Carpenter*, 227 Mass. 288, 290; *London Guar. & Acc. Co. Ltd.* v. *Jacobson*, 241 Mass. 255, 258, 259; *Creighton* v. *Elwell*, 243 Mass. 580, 583; *Forte* v. *Caruso*, 336 Mass. 476, 480. This provision is thus binding on Aetna. Since Worcester terminated the plaintiffs' employment, since there is no showing that this termination was improper in any respect, and since the annuity contract then took over and in pursuance thereof the plaintiffs' annuities were cancelled, the demurrers were properly sustained.

4. While the plaintiffs do not argue it in their brief, no error appears in the refusal of the trial judge to allow the plaintiffs to amend their bill. This was a matter for the exercise of judicial discretion. *Foster* v. *Shubert Holding Co.* 316 Mass. 470, 477. *Magaletta* v. *Millard*, 346 Mass. 591, 595.

*Interlocutory decrees and final decree affirmed.*