Willie CONNELL, Plaintiff-Appellee,

v.

**UNITED STATES STEEL CORPORA-TION et al., Defendants-Appellants.**

No. 74–2156.

United States Court of Appeals,
Fifth Circuit.

July 25, 1975.

William C. Knight, Jr., D. Frank Davis, Birmingham, Ala., for defendants-appellants.

George C. Longshore, Birmingham, Ala., for plaintiff-appellee.

Before MURRAH *, WISDOM and AINSWORTH, Circuit Judges.

WISDOM, Circuit Judge:

This is a class action brought by Willie Connell on behalf of mine foremen who went out on strike in 1945 in support of efforts of the Foremens' Association of America (FAA) to organize supervisors. Foremen at the Wylam Coal Mine in Alabama were denied, in part or in whole, pensions because of the ten-day break in their service caused by the strike. Now they sue to receive their pensions.

Willie Connell started work at the mine as an hourly worker in 1928. He was promoted to foreman in 1940. In 1943 the Foremens' Association of America began to organize supervisors. At that time unions of supervisors were legal. The district court found that by April 1945 between 75 percent and 80 percent of the foremen at the Wylam Mine were members. On April 1, 1945, the United Mine Workers of America (UMWA) struck all mines in the United States then under contract. On April 12, 1945, the President, under authority of the War Labor Disputes Act, seized the mines. See United States v. United Mine Workers, 1947, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884. That very day the foremen joined the UMWA on strike. The same day the Tennessee Coal and Iron Company (TCI), predecessor to United States Steel, sent a letter to all striking foremen informing them that if they were not back to work by April 16, they would be considered as having resigned without notice. When they failed to return, the notation "quit without notice" was placed on each striking foreman's personnel record. No such action was taken against the striking workers. On April 23, the strike ended, and the members of both the UMWA and the FAA returned to work. The foremen, however, were reemployed only after they signed notices saying, "I understand that I am employed as a new employee and that the continuity of my service has been broken". They were taken back to their same jobs at the same pay as they had before the strike. On August 14, 1954, Connell was laid off. In accordance with the company policy, he was carried as an employee for two more years, at which time his continuous service ended. He was an employee for twenty-eight years. There is evidence that he was told by a company official in 1954 that he would not receive a pension. On February 1, 1963, he was officially so informed by United States Steel, when it refused to bridge his gap in service.[1] On December 9, 1972, he filed this lawsuit.

The district court held that Connell had not quit, that his discharge would have been illegal under the Wagner Act, that the trustees of the United States Steel and Carnegie Pension Fund were, by relying on an illegal act, themselves acting arbitrarily and capriciously under Alabama law, and that neither laches nor the statute of limitations barred Connell's action. N.D.Ala., 1974, 371 F.Supp. 991.

* Senior Circuit Judge of the Tenth Circuit, sitting by designation.

1. The Trustee's eligibility rules are as follows: Any Employe who, at the time of his retirement from employment subsequent to February 28, 1950, shall have had at least fifteen (15) years continuous service and shall have attained the age of 65 years, shall be entitled to receive a pension upon his retirement.

Any Employe who shall have had at least fifteen (15) years continuous service and who shall have become through some unavoidable cause permanently incapacitated prior to age 65 (as the term "permanently incapacitated" shall be defined in the administrative regulations) shall be entitled to a pension upon his retirement after February 28, 1950. Such pension for permanent incapacity shall continue only so long as such pensioner shall be permanently incapacitated. The permanency of incapacity may be verified by medical examination prior to age 65 at any reasonable time.

On appeal, the trustees argue that the issue of Connell's rights under the Wagner Act is preempted by the National Labor Relations Board; that, for this reason, the district court was without jurisdiction; that the law nationalizing the mines made Connell a government employee, without the right to strike; that their action in denying Connell his pension was not taken in reliance on an illegal act by TCI; that, in any case, they repudiated the trust in 1945 when Connell was informed that he was hired as a new employee; and that his claim is barred by laches or the limitation period. We find no merit in these contentions, and affirm the district court.

■ For the most part, we adopt the reasoning of the district court. We hold, particularly, that the court's findings were not clearly erroneous under Fed.R. Civ.P. 52(a). Because, however, preemption is a jurisdictional question, we address ourselves to this issue, which was not put forward in the court below.

## I

## PREEMPTION

■ It is well settled that if claims are even arguably unfair labor practices, both federal and state courts must decline jurisdiction in favor of the NLRB. San Diego Building Trades Council v. Garmon, 1959, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775. Motor Coach Employees v. Lockridge, 1970, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473; Prepmore Apparel, Inc. v. Amalgamated Clothing Workers, 5 Cir. 1970, 431 F.2d 1004. The purpose of this doctrine is to insure a uniform national labor policy. See The Developing Labor Law 782 (Morris ed. 1971). Congress created the National Labor Relations Board as the agency to interpret the National Labor Relations Act and to administer the national labor policy. Of course, the parties must first be subject to the jurisdiction of the Board before

adjudication by a court is preempted. See Windward Shipping (London) Ltd. v. American Radio Association, AFL–CIO, 1974, 415 U.S. 104, 94 S.Ct. 959, 39 L.Ed.2d 195; American Radio Association, AFL–CIO v. Mobile Steamship Association, 1974, 419 U.S. 215, 42 L.Ed.2d 399, 95 S.Ct. 409.

The trustees argue that the discharge of a striking employee is on its face an unfair labor practice and that Connell's failure to assert his claim before the Labor Board in 1945 bars him from doing so now.[2] We disagree for several reasons.

■ First, while United States Steel is a party defendant to this suit, the true defendant party in interest is the United States Steel and Carnegie Pension Fund. This defendant is not subject to Labor Board jurisdiction, except insofar as it is an employer of its own employees.[3] Certainly Connell was not an employee of the Fund and therefore the Fund could not be guilty of violating Section 8(a)(1) or (3) "It shall be an unfair labor practice for an *employer*—(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7 . . . (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . .".

■ Second, Connell is a retiree and no longer an *employee* of United States Steel. In Allied Chemical and Alkali Workers v. Pittsburgh Plate Glass Company, 1971, 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341, the Supreme Court held that retired workers are not employees under the National Labor Relations Act, and therefore the employer need not bargain over benefits of retirees. Consequently, no liability for unfair labor practices can now result from a suit by a retired worker for interference with the *"employees'* . . . right to self or-

2. A charge must be filed with the National Labor Relations Board within 6 months of the unfair labor practice. NLRA § 10(b), 29 U.S.C. § 160(b) (1970).

3. See Mineworkers' Welfare and Retirement Fund, 192 NLRB No. 120.

ganization . . .". NLRA § 7, 29 U.S.C. § 157 (1970). Thus Connell's claim is not even "arguably subject to § 7 or § 8 of the Act . . .". *Garmon*, 359 U.S. at 245, 79 S.Ct. at 780. See United Mine Workers, 202 NLRB 734 (1973).[4]

Finally, there is an exception to the preemption doctrine for "matters of peripheral concern to federal labor law". See The Developing Labor Law 797–800 (Morris ed. 1971). The Taft-Hartley Act did not remove all areas of labor law from the purview of state law. 3 K. Davis, Administrative Law, § 19.04 (1957). Indeed, Congress affirmatively provided that state law govern pension and welfare trust matters. II Legislative History of the Labor Management Relations Act of 1947, 1304, 1311; Bricklayers, Masons and Plasterers Int'l Union v. Stuart Plastering Company, Inc., 5 Cir. 1975, 512 F.2d 1017, 1025; Snider v. All State Administrators, Inc., 5 Cir. 1973, 481 F.2d 387, 390.

In Retail Clerks International Association Local 1625 v. Schermerhorn, 1963, 375 U.S. 96, 11 L.Ed.2d 179, 84 S.Ct. 219, the Supreme Court faced the issue whether the Taft-Hartley Act's prohibition of the agency shop[5] vested the Labor Board with exclusive jurisdiction to determine the validity of these arrangements. A unanimous Supreme Court held that Congress did not intend to displace state authority by enacting this provision.[6] In light of the congressional objective of having state courts (or federal diversity courts) regulate pension and welfare trust relationships in accordance with state trust law, we hold that the court's incidental construction of a provision of federal labor law to determine if trustees have relied in their decision on an illegal act is not in itself sufficient to divest the court of jurisdiction.

---

4. The trustees, in their brief, assert that "the National Labor Relations Board routinely hears and resolves controversies when the complaining party contends that he is being discriminated against in pension benefits because of collective activities". However, they cite no cases where a pension and welfare fund was held to be an employer, a labor organization, or an agent of either, thus coming within the Board's jurisdiction. Cf. Welch, *Pension and Welfare Plans and the NLRB*, 7 Textbook for Welfare, Pension Trustees & Administrators 223 (1965). The cases cited are inapposite. In one case the Fund was an employer. Mineworkers' Welfare and Retirement Fund, 192 NLRB No. 120. In Florida Sprinkler Association, 199 NLRB No. 142, the Board ordered an employer to cease and desist requiring non-union employees to pay their own insurance premiums. In Sherwood-Templeton Coal Company, Inc., 188 NLRB No. 74, the Labor Board found that the employer and union committed unfair labor practices by requiring continuous union membership as a condition for receiving a pension. The same facts arose after *Pittsburgh Plate Glass* in United Mineworkers, 202 NLRB 734 (1973), and the Board held it had no jurisdiction. Chairman Miller dissented, thinking that the requirement interfered with the rights of *still active* employees to refrain from union activities under § 7 of the Act. 202 NLRB at 735. Manifestly, neither theory fits the facts of Connell's case.

The Board said, "if we were to find a violation . . . what remedy would we provide? A cease-and-desist order and remedy would, in fact, not go to the purported impact of Respondent's conduct on the active miners who are required to maintain their union membership under a valid union-security clause. Rather the cease-and-desist provisions would of necessity refer directly to the requirement allegedly imposed upon retirees, over whom the Supreme Court has denied us jurisdiction. We would, therefore, be attempting to do indirectly what we have been prohibited from doing directly". 202 NLRB at 735.

5. The Act states that it is not an unfair labor practice for an employer and union to consent to an agency shop under certain conditions, unless a state's "right to work" law prohibits it. The Court held that state courts, not the National Labor Relations Board, must determine whether state law prohibits the arrangement in question, even though it is an unfair labor practice to enforce an agency shop prohibited by state law. See Taft-Hartley §§ 8(a)(3), 14(b).

6. The Court said "Garmon . . . does not state a constitutional principle; it merely rationalizes the problems of coexistence between federal and state regulatory schemes in the field of labor relations . . . .. The purpose of Congress is the ultimate touchstone". 375 U.S. at 103, 84 S.Ct. at 222, 11 L.Ed.2d at 184. Likewise, Congress left the area of pension trust law to the states, at least until passage of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

Connell's right to a pension could not vest until he retired from active service. His cause of action against the trustees did not arise until then. It would be a strained and unnecessary interpretation of the preemption doctrine, reaching an unjust result, to say that Connell somehow waived all future rights against third parties by failing to file an unfair labor practice charge with the NLRB in 1945. We decline to do so. After all, the issue before the district court was not whether TCI committed an unfair labor practice in 1945, but whether Connell is entitled to a pension as of 1972.

## II

## THE WAR LABOR DISPUTES ACT

Alternatively the trustees argue, as they did in the district court, that the War Labor Disputes Act of 1943, 57 Stat. 163, superceded the Wagner Act and made the miners government employees without the right to strike. Therefore, they assert, Connell and others were rightly discharged by TCI, and the trustees were accordingly entitled to rely on the discharge in determining that the foremen's service was broken. The district court fully considered and discussed this issue and correctly determined that (1) employees did not lose their § 7 rights during the mine seizures and (2) in any case, the foremen's strike did not disrupt production, an action that would have been violative of the Act. We adopt the opinion of the district court in its entirety on this issue.

## III

## TRUST LAW

After correctly determining that state trust law applied in this case, the district court applied the law of Alabama to assess Connell's rights. The trust agreement and rules designate the law of Pennsylvania as applicable.[7] The parties

agree, however, that Pennsylvania and Alabama law are identical on the question of the scope of judicial review of trustee action. The parties discussed this issue fully in supplemental briefs which the court requested.

The threshold question is whether under Alabama conflicts law, an Alabama court would apply Pennsylvania law in a suit by a beneficiary against a trustee where the trust agreement designates Pennsylvania law. Klaxon Company v. Stentor Electric Mfg. Co., Inc., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. It is clear that Alabama, following the generally accepted conflicts rule, would apply Pennsylvania law in this circumstance because (1) it would offend no public policy of Alabama to do so, and (2) even if there were no designated law, the administration of this trust is more closely related to Pennsylvania than Alabama, since both United States Steel and the Fund are domiciled in Pennsylvania. See ALI Rest.2d Conflict of Laws § 272 (1971); Leflar, American Conflicts Law § 192 at 470 n.2 (2d ed. 1968); Land, Trusts in the Conflict of Laws §§ 40.1–.2 (1940).

Although the district court applied Alabama law, it is equally true that the actions of trustees are reviewable in Pennsylvania.

The law is clear with regard to profit-sharing and pension plans. Even when the employee does not contribute to the plan, when he renders service to an employer who has such a plan in effect, he has a contractual right to enforce the plan according to its terms. Even though by the terms of the plan the committee had 'sole and exclusive power and authority to interpret and construe the provisions of the Plan and to decide any disputes which may arise regarding the rights of employees thereunder' . . . the committee's decisions are subject to judicial review to insure that they are

---

7. This case was tried on the basis of Alabama law. After oral argument, this Court discovered that the Agreement and Rules designated Pennsylvania law as applicable, and we requested supplemental briefs on the effective-

ness of his provision under Alabama law, and the differences, if any, between Alabama and Pennsylvania law with respect to substantive trust law and limitation of actions.

exercised 'in good faith and within the bounds of a reasonable judgment'.

Garner v. Girard Trust Bank, 1971, 442 Pa. 166, 275 A.2d 359. See Shore v. Bell Tel. Co., 1957, 389 Pa. 445, 133 A.2d 157, 159; 2 Scott on Trusts § 187; Levin, Labor-Management Benefit Funds 253–58 (1971); Welch and Wilson, *Applicability of Traditional Principles of Trust Law to Union and Management Representatives Administering Taft-Hartley Trusts*, 22 Lab. L.J. 671, 675–76 (1972); Goetz, *Developing Federal Labor Law of Welfare and Pension Plans*, 55 Cornell L.Rev. 911, 926, 936–38 (1970). The district court held:

> Applying the general principles to this case, it is clear that the trustee has not only been guilty of arbitrary or capricious conduct but is actually relying upon a violation of law in refusing to recognize the plaintiff's pre-strike service.

The district court's legal conclusion was under Alabama law or Pennsylvania law correct.[8]

It is true, as the trustees argue, that "a chancellor does not have the authority to rewrite or amend a plan or make changes, in accordance with his own ideas as to what is fair or equitable." *Reilly* at 462. They assert that the district court in effect has written out of the pension rules the continuous service requirement. On the contrary, the district court ruled that Connell's service *was* continuous. The court prevented the trustees from relying on an illegal act to conclude that Connell's service had not been continuous. This is clearly within the court's equitable jurisdiction. ALI Rest.2d Trusts § 199 (1959).

This is not the kind of "hard" case for which relief cannot be granted, as when a company goes bankrupt, is liquidated, merges, moves or ceases to do business, or employees are discharged or laid off before their rights vest. See Levin, *Proposals to Eliminate Inequitable Loss of Pension Benefits*, 15 Vill.L.Rev. 527 (1970). Cases cited by the trustees are of this kind.[9] Because employees are thereby prevented from becoming beneficiaries with enforceable vested rights, Congress remedied this wrong by providing for vesting and portability of pension rights in the Retirement Income Security Act of 1974, 88 Stat. 829, 29 U.S.C. § 1001 et seq., effective January 1st 1975. Here, Connell's rights had already vested, because he accumulated the minimum time in service. He did not quit in 1945, nor could he have been legally fired in 1945. Accordingly, he is entitled to his pension.

We need not reach the district court's alternative argument that Connell had

---

**8.** This is a diversity case. There is a plethora of federal cases reiterating the "arbitrary and capricious trustee action" standard. See e. g., Danti v. Lewis, 1962, 114 U.S.App.D.C. 105, 312 F.2d 345; Kosty v. Lewis, 1963, 115 U.S.App.D.C. 343, 319 F.2d 744; Sturgill v. Lewis, 1966, 125 U.S.App.D.C. 335, 372 F.2d 400; Miniard v. Lewis, 1967, 128 U.S.App.D.C. 299, 387 F.2d 864; Roark v. Lewis, 1968, 130 U.S.App.D.C. 360, 401 F.2d 425; Gomez v. Lewis, 3 Cir. 1969, 414 F.2d 1312; Gaydosh v. Lewis, 1969, 133 U.S.App.D.C. 274, 410 F.2d 262; Assalone v. Carey, 1972, 154 U.S.App.D.C. 69, 473 F.2d 199; Collins v. UMW Welfare and Retirement Fund, D. D.C.1969, 298 F.Supp. 964, *aff'd* 141 U.S.App.D.C. 387, 439 F.2d 494; Lee v. Nesbitt, 9 Cir. 1971, 453 F.2d 1309; Lowerstern v. International Association of Machinists and Aerospace Workers, 1973, 156 U.S.App.D.C. 228, 479 F.2d 1211; Maness v. Williams, 8 Cir. 1975, 513 F.2d 1264. These cases often do not mention a basis for jurisdiction, or state that the suits are brought under Taft-Harley § 301. The Supreme Court in two footnotes to *Pittsburgh Plate Glass*, 404 U.S. at 176, n. 16 & 181 n. 20, 92 S.Ct. 383, implied that a retiree's action under § 301 would lie. See also Goetz, *Developing Federal Labor Law of Welfare and Pension Plans*, 55 Cornell L.Rev. 911, 935–38 (1970). Of course, Connell is a supervisor, and his contract rights are not governed by a collective bargaining agreement enforceable under § 301. Nonetheless, the standard of review set out in these cases is sound.

**9.** See, e. g., Reilly v. Walker Bros., 1967, 425 Pa. 1, 229 A.2d 457 (liquidation of a pension fund); UMW v. Quaker City Iron Works, 48 L.C. ¶ 18, 468 (Pa.Com.Pl.1963) (employees voted in a new union); Schneider v. McKesson & Robbins, Inc., 2 Cir. 1958, 254 F.2d 827 (plant closed); Pavlovscak v. Lewis, E.D.Pa. 1960, 190 F.Supp. 205, *aff'd* 3 Cir. 1961, 295 F.2d 39 (illness prevented continuous service); Avondale Mills, Inc. v. Saddler, 1974, 292 Ala. 134, 290 So.2d 173 (plant closed).

enforceable legal rights as well, either under a theory of unjust enrichment or unilateral contract. See Lucas v. Seagrove Corp., D.Minn.1967, 277 F.Supp. 338; Fredricks v. Georgia Pac. Corp., E.D.Pa.1971, 331 F.Supp. 422, *app. dismissed*, 3d Cir. 1972, 474 F.2d 1338; Hurd v. Illinois Bell Tel. Co., 7 Cir. 1956, 234 F.2d 942; Goodman v. Winn-Dixie Stores, Inc., Fla.App.1970, 240 So.2d 496, *writ discharged*, Fla., 276 So.2d 465. Cf. Note, *Legal Problems of Private Pension Plans*, 70 Harv.L.Rev. 490 (1957). The argument here is that an employer's contributions into a pension plan are in reality wages paid into an account for the benefit of each employee as an individual. This theory has been rejected by several courts. See, e. g., Knoll v. Phoenix Steel Corp., 3 Cir. 1972, 465 F.2d 1128, *cert. denied* 409 U.S. 1126, 93 S.Ct. 941, 35 L.Ed.2d 257; Assalone v. Carey, 1972, 154 U.S.App.D.C. 69, 473 F.2d 199; Gorr v. Consolidated Food Corp., 1958, 253 Minn. 375, 91 N.W.2d 772; Sbrogna v. Worcester Stamped Metal Co., 1968, 354 Mass. 17, 234 N.E.2d 749. The difficulty with the quantum meruit argument is that pension plans are set up on the basis of actuarial estimates; it is expected that not every employee will ultimately receive a pension. The application of this theory to every employee may result in bankrupting a fund, thus depriving all employees of their pensions. Connell's equitable cause of action is a sufficient basis for his recovery.

### IV

### STATUTE OF LIMITATIONS

 The district court applied the familiar rule that "as between trustee and cestui que trust, in the case of an express trust, the statute of limitations has no application, and no length of time is a bar".[10] Benners v. First National Bank of Birmingham, 1945, 247 Ala. 74, 22 So.2d 435, 439. See Hart v. First National Bank of Birmingham, 5 Cir. 1957, 373 F.2d 202. The court further held that laches did not bar the claim. See 3 Scott on Trusts § 219 (3d ed. 1967); ALI Rest.2d Trusts, § 219 (1959). The trustees point to the exception to this rule, that where the trustee repudiates the trust, the court applies the statute of limitations. The trust was repudiated, they say, in 1945 when Connell was told that he was rehired as a new employee.[11] The short answer to this argument is that it was the employer, not the trustee, who so informed Connell. The only other communication on the record relating to a denial of a pension is a letter of February 1, 1963, within the ten year period. We hold that the district court was correct in rejecting this contention.

Willie Connell spent twenty-six years of his life in the mines of Alabama. He struck with the FAA, as was his legal right, along with miners in the UMWA, for ten days, thirty years ago. None of the miners he supervised was denied a pension on account of the strike; several of his fellow foremen were given pensions in spite of the strike. We affirm the district court's action in rectifying, for Connell and the class he represents, the trustees' denial of their right to live their older years with some measure of financial security.

Affirmed.

10. The law of the forum governs procedure and remedies in Alabama. See Macey v. Crum, 1947, 249 Ala. 249, 30 So.2d 666, 669; Fleming v. Pan Am. Fire & Cas. Co., 5 Cir. 1974, 495 F.2d 535.

11. The validity of this proposition is doubtful in any case because repudiation requires the trustee to renounce the entire trust, that is, the trust must terminate. See Am.Jur.2d Trusts § 591.