**Peggie Ann KING, Dynnell Johnson, Barbara Jenkins, and Irene Combs, Plaintiffs,**

v.

**GEMINI FOOD SERVICES, INC., Ernest McNeal, Sidney C. Ragland, and Public Service Employees Local Union 572 of the Laborers International Union of North America, AFL–CIO, Defendants.**

Civ. A. No. 76–37–NN.

United States District Court, E. D. Virginia, Newport News Division.

Nov. 1, 1976.

James Newton Wilhoit, III, National Right to Work Legal Defense Foundation, Fairfax, Va., Stephen M. Smith, Hampton, Va., for plaintiffs.

William Mills Krieger, Newport News, Va., for defendants Gemini Food Services, Inc. and Ragland.

William A. Smith, Newport News, Va., for defendant McNeal.

Norman Olitsky, Portsmouth, Va., for defendant Public Service Employees Local Union 572, etc.

## MEMORANDUM OPINION

KELLAM, Chief Judge.

This suit arises from a labor dispute concerning the legality of a union shop agreement for a business operating on a federal enclave situated within Virginia. Jurisdiction is claimed on the basis of the existence of a federal question and an amount in controversy in excess of $10,000 exclusive of costs and interest. 28 U.S.C. § 1331. Plaintiff seeks declaratory and injunctive relief plus money damages. This case now comes up for consideration on motions for judgment on the pleadings. Fed.R.Civ.P. 12(c).

Plaintiffs Johnson, Jenkins, and Combs are employees of Defendant Gemini Food Services, Inc. (hereinafter Gemini). Plaintiff King was employed by Gemini before being discharged, allegedly, for failure to join Defendant Public Service Employees Local Union 572 of the Laborers International Union of North America, AFL–CIO (hereinafter Union). Defendant McNeal was the owner and manager of Gemini's predecessor company, Multi-Mack, Inc. Defendant Ragland is the president and manager of Gemini. The union shop agreement in question was arranged and honored by McNeal, Ragland and Union.

Gemini is engaged in the business of supplying certain food services on the federal enclave of Fort Monroe, Virginia. Pursuant to agreement between Gemini and Union, employees of Gemini must make application to join Union within 30 days of their becoming employed by Gemini and must maintain membership in good standing in Union as a condition of continued employment. Failure to join Union or failure to maintain good standing in Union are grounds for dismissal.

Plaintiffs attack the union shop agreement on three grounds. The first is that by virtue of the criminal sanction of Virginia's Right to Work Law (Va.Code Ann. § 40.1–58 et seq.), the civil and regulatory provisions of Virginia's Right to Work Law are assimilated into federal law by the federal Assimilative Crimes Act (18 U.S.C. § 13), making union shop agreements violative of

federal law. Plaintiffs' second claim is that the union shop agreement is unconstitutional because the compulsory paying of dues is a deprivation of property without due process of law and the required association with the union is a deprivation of Plaintiffs' freedom of association. Thirdly, Plaintiffs have suggested that the union shop agreement violates the standards set forth in sections 8(a)(3) and 8(b)(2) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(3), (b)(2).

■ Defendants in the case at bar have moved for a judgment on the pleadings. Plaintiffs have moved for a partial summary judgment. The test applicable for a judgment on the pleadings or a summary judgment is whether or not, when viewed in the light most favorable to the party against whom the motion is made, no genuine issues of material fact remain and the case can be decided as a matter of law. Fed.R.Civ.P. 12(c); C. Wright & A. Miller, *Federal Practice and Procedure* §§ 1368, 1369 (1973). Additionally, Defendants Ragland and Gemini cross claimed against Union and McNeal for indemnification, court costs and attorney's fees. Union moved that the cross claim be dismissed for failure to state a claim.

■ The Virginia Right to Work law is not incorporated by the federal Assimilative Crimes Act because the policy of the Virginia statute conflicts with federal law. The Assimilative Crimes Act fills gaps in the federal criminal code. State laws are not applied to federal enclaves through the Assimilative Crimes Act if the state law provision would conflict with existant federal law or policy. *Williams v. United States,* 327 U.S. 711, 717–24, 66 S.Ct. 778, 90 L.Ed. 962 (1946); *Stewart & Co. v. Sadrakula,* 309 U.S. 94, 100, 60 S.Ct. 431, 84 L.Ed. 596 (1940); *United States v. Warne,* 190 F.Supp. 645, 657–58 (N.D.Cal.1960); *Nash v. Air Terminal Services,* 85 F.Supp. 545, 548 (E.D.Va.1949); *Air Terminal Services, Inc. v. Rentzet et al.,* 81 F.Supp. 611 (E.D.Va. 1949); Note, *Federal Assimilative Crimes Act,* 70 Harv.L.Rev. 685 (1957); cf. *21 Am. Jur.2d Criminal Law* § 395 (1965); see *United States v. Press Publishing Co.,* 219 U.S. 1, 9, 31 S.Ct. 212, 55 L.Ed. 65 (1911). Such a conflict does arise in the instant case. Virginia law expressly prohibits union shop agreements while federal law expressly permits union shop agreements.[1] *Compare* Va. Code Ann. § 40.1–58 with 29 U.S.C. § 158(a)(3). In view of the foregoing it is unnecessary for this Court to consider whether *vel non* the Virginia Right to Work Law would be incorporated by the Assimilative Crimes Act in the absence of conflicting federal policy. It is also, *a fortiori,* unnecessary to decide whether any implied civil causes of action arise under the federal Assimilative Crimes Act.

■ Plaintiff's attack on the constitutionality of Section 8(a)(3), which explicitly permits union shop agreements requiring union membership as a condition of continued employment, is without merit insofar as it requires payment of dues and union fees. In *Railway Employees' Department, AFL v. Hanson,* 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), the Supreme Court upheld union security agreements requiring payment of dues, initiation fees and assess-

---

1. Section 8(a)(3) of the National Labor Relations Act has been interpreted to permit the requiring of paying union dues. *NLRB v. General Motors Corp.,* 373 U.S. 734, 740–41, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963); *Radio Officers' Union v. NLRB,* 347 U.S. 17, 40–41, 74 S.Ct. 323, 98 L.Ed. 455 (1954); *NLRB v. Hershey Foods Corp.,* 513 F.2d 1083, 1085 (9th Cir. 1975); *McDowell v. Clement Bros. Co.,* 260 F.Supp. 817, 819 (N.D.Ga.1966). This form of union agreement is frequently labeled an "agency shop agreement". See 2 J. Jenkins, *Labor Law* § 4.9 (1969).

Section 8(a)(3) of the National Labor Relations Act provides in pertinent part that ". . . nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization . . . to require as a condition of employment membership therein . . .". By virtue of section 14(b) of the Labor Management Relations Act, 29 U.S.C. § 164(b), states may enact right-to-work laws. This permission to the states, however, does not soften application of section 8(a)(3) of the National Labor Relations Act in areas under exclusive federal jurisdiction.

ments pursuant to congressional authorization in the Railway Labor Act against attacks leveled under the First and Fifth Amendments. The Court, however, carefully limited its holding, stating:

> If the exaction of union dues, initiation fees, or assessments is used as a cover for forcing ideological uniformity or other action in contravention of the First Amendment, this judgment will not prejudice the decision in that case. . . . We only hold that the requirement for financial support of the collective-bargaining agency by all who receive the benefits of its work . . . does not violate either the First or the Fifth Amendments. *Id.* at 238, 76 S.Ct. at 721.

Subsequent court decisions have followed the principle laid down in *Hanson, supra,* thereby upholding union security agreements requiring payment of dues and initiation fees. *Buckley v. American Fed. of Television and Radio Artists,* 496 F.2d 305 (2d Cir. 1974), *cert. denied,* 419 U.S. 1093, 95 S.Ct. 688, 42 L.Ed.2d 687 (1973), *rehearing denied,* 420 U.S. 926, 95 S.Ct. 1342, 43 L.Ed.2d 433 (1975); *Linscott v. Millers Falls Co.,* 440 F.2d 14 (1st Cir. 1971), *cert. denied,* 404 U.S. 872, 92 S.Ct. 77, 30 L.Ed.2d 116 (1971); *Gray v. Gulf, Mobile & Ohio R.R.,* 429 F.2d 1064 (5th Cir. 1970), *cert. denied,* 400 U.S. 1001, 91 S.Ct. 461, 27 L.Ed.2d 451 (1971); *see* Haggard, *A Clarification of the Types of Union Security Agreements Affirmatively Permitted by Federal Statutes,* 5 Rutgers-Camden L.J. 418 (1974), *passim.*

Although courts have expressly upheld those agreements that require the payment of initiation fees and dues in support of the collective bargaining efforts of the union, the Supreme Court has never discussed the constitutionality of union security agreements that condition continuing employment on full union membership, which would entail not only payment of union dues and fees, but also adherence to other union rules governing employee conduct with respect to management and the union organization itself. Agreements of this sort, however, are arguably violative of the National Labor Relations Act. *See NLRB v. Hershey Foods Corp.,* 513 F.2d 1083 (9th Cir. 1975) (under valid union security agreement, employee who tendered the dues and fees uniformly required of members could not be compelled to become a full-fledged union member in order to be protected from discharge); *Compulsory Union Membership under the National Labor Relations Act—Is Hershey Foods Corp. the End of the Road?,* 23 W & L L.Rev. 205 (1976), *passim.*

 It is unassailable that this Court possesses jurisdiction to decide the constitutionality of union shop agreements requiring only payment of dues and fees because such agreements are uncontestably authorized by the terms of the statute and therefore may not arguably constitute an unfair labor practice. It may also decide the applicability of the Virginia Right to Work Law to federal enclaves. *Cf. Oil Chemical and Atomic Workers v. Mobil Oil Corp.,* 421 U.S. 407, 96 S.Ct. 2140, 48 L.Ed.2d 736 (1976). But this Court must defer to the National Labor Relations Board (hereinafter NLRB) for a determination of whether or not the requirement that employees maintain union membership in good standing in addition to paying dues and fees complies with the standards of section 8 of the National Labor Relations Act, 29 U.S.C. § 158. Under the preemption doctrine, federal courts must defer to the exclusive competence of the NLRB when unfair labor practices are arguably alleged. *Amalgamated Ass'n of Street, Elec. Ry. and Motor Coach Employees v. Lockridge,* 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); *San Diego Buildings Trades Council v. Garman,* 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); *see Garner v. Teamsters Union,* 346 U.S. 485, 490–91, 74 S.Ct. 161, 98 L.Ed. 228 (1953). *See also Connell v. U. S. Steel Corp.,* 516 F.2d 401 (5th Cir. 1975).

Taking the facts in the light most favorable to Plaintiffs, this Court rules that as a matter of law the Virginia Right to Work Law is not assimilated into federal law by the Federal Assimilative Crimes Act and therefore does not apply to federal enclaves. It is further recognized by this

968

Court that as a matter of law it is constitutionally permissible to require payment of union dues as a condition of continued employment. As to whether the specific agreement between Gemini and Union comports with statutory requirements of fair labor practice is a question for consideration by the NLRB. In view of the findings of this Court, Ragland's and Gemini's cross claim for indemnification and related relief is inappropriate.

Accordingly, Defendants' motion for judgment on the pleadings is GRANTED as to the constitutionality of the requirement of union membership and as to the application of the Assimilative Crimes Act, 18 U.S.C. § 13.