**Howard COOPER et al., Plaintiffs,**

v.

**GENERAL DYNAMICS, CONVAIR AEROSPACE DIVISION, FORT WORTH OPERATION, et al., Defendants.**

**Civ. A. No. CA–4–2157.**

United States District Court,
N. D. Texas,
Fort Worth Division.

July 26, 1974.

Joseph A. Jenkins, Dallas, Tex., for plaintiffs.

J. Olcott Phillips, Fort Worth, Tex., Otto B. Mullinax, Dallas, Tex., Sam Houston Clinton, Jr. Austin, Tex., for defendants.

## MEMORANDUM OPINION

ROBERT M. HILL, District Judge.

This suit arises from the fact that the plaintiffs, Howard Cooper, Rita Kimbell and Howard T. Hopkins, are members of a religious organization known as the Seventh Day Adventist and are also employees of defendant General Dynamics, a Texas corporation, who has entered into a union security agreement with the International Association of Machinists and Aerospace Workers, AFL–CIO, and its local union, District Lodge No. 776. The union security agreement provides that all employees within the collective bargaining unit must authorize a payroll deduction for, or pay directly to the union, monies equal to the dues and initiation fees of the union as a condition of continued employment with General Dynamics.

The plaintiffs challenge the union security agreement on two grounds. First, it is alleged that the union security agreement is repugnant to the Union Security Act of 1951 and the Texas Right to Work Act. Second, it is alleged that the union security agreement discriminates against the plaintiffs in the exercise of their religious practice and observance by being required to financially support a union. Jurisdiction is conferred upon this court by 28 U.S. C. §§ 1331, 1343, 1441 and 42 U.S.C. § 2000e–5(f).

## I. The Seventh Day Adventist Church

The Seventh Day Adventist Church is a religious organization with about 500,000 members in the United States and about 2½ million in the world. This church has taken the position for the past 75 years that its members should not join or financially support labor unions and professional associations. This position is based on the belief that a church member must love his neighbor as himself and that since a church member's employer is his neighbor he cannot join in such activities of a labor union such as strikes and picketing without violating the commandment to love his neighbor. Additionally, it is the teaching of the Seventh Day Adventist Church that when a church member does join or contribute to a labor organization he places his immortal soul in jeopardy and denies himself a chance for eternal life and salvation.

The defendants have challenged the religious sincerity of the plaintiffs Kimbell and Hopkins. However, after considering the evidence, this court finds that all of the plaintiffs are sincere in their religious convictions and are now conscientiously committed to their church's position that its members should not belong to or contribute financial support to a labor organization. Kimbell and Hopkins were at one time members of the defendant union but they testified that at the time they were members of the defendant union they were not fully aware of the religious implications of their membership in a labor union and that, after being counseled by the church and having studied the church's teachings, they discovered that being a member of a union was not compatible with the teachings of the Seventh Day Adventist Church.

## II. The Violation of State Law Claim

Count I of the plaintiffs' amended complaint challenges the validity of the union security agreement which was negotiated between General Dynamics and the international and local unions which represent the bargaining unit of which plaintiffs are members. It is argued that the union security agreement violates § 14(b) of the National Labor Relations Act and the Texas Right to Work Act of 1947. Section 14(b) reserves to the states the power to police agreements made within the state requiring membership in a labor organization. Pursuant to this federal statute, the Texas legislature enacted the Right to Work Act of 1947, Vernon's Ann. Tex.Rev.Civ.Stat. art. 5207a (1971), which prohibits membership in a labor organization as a condition of employment.[1] None of the defendants deny that the union security agreement is an agency shop in violation of article 5207a, but it is asserted by the defendants the agreement is enforceable and

---

1. An agency shop is a union security agreement which does not obligate an employee to become a member of a labor union or to participate in any union activities, but only requires that he pay an agency fee, usually the equivalent of the union dues, in return for the collective bargaining services which the union renders on behalf of the employees. A closed or union shop is a union security agreement which obligates an employee as a condition of employment to become a member of a labor union and to participate in all union activities. An open shop agreement permits voluntary union membership and participation but does not require the payment of any fees or dues to the union as a condition of employment. Tex.Rev.Civ.Stat. art. 5207a (1971) prohibits both the agency and closed shops in Texas.

controls employment activities on a federal enclave and thus is subject to and controlled exclusively by federal law which permits agency shop agreements. 29 U.S.C. § 151 et seq. A federal enclave is a territory which has been transferred by a state through consent or cession to the United States who then acquires exclusive jurisdiction over all activities within the area. U.S.Const., Art.1, § 8, cl. 17.

It is clear from all the evidence that the General Dynamic's plant in which the plaintiffs are employed is located on a federal enclave which was created in 1942 when the State of Texas ceded jurisdiction and conveyed the land to the United States of America. Validity of this federal enclave was judicially determined by a Texas court in Board of Equalization v. General Dynamics Corp., 344 S.W.2d 489 (Tex.Civ.App.—Fort Worth 1961 writ ref'd n. r. e.), where it was held that the property had been ceded to the federal government and that a city and school district had no authority to levy taxes on the property. Moreover, the Supreme Court has recently upheld the exclusive nature of the federal jurisdiction and right of control of a federal enclave. In United States v. State Tax Commission of Mississippi, 412 U.S. 363, 93 S.Ct. 2183, 37 L.Ed.2d 1 (1973) the Court invalidated the attempt of a state tax commission to force collection and remittance of liquor sales markups from military installations located on land within the State but owned and controlled by the federal government. The Court held that the federal enclave was to the state the same as a territory or another state which no longer constituted a part of that state and did not function under its control.

▆▆ At trial the testimony and evidence revealed that each of the plaintiffs were hired, work on and are paid on this federal enclave and that the union security agreement in dispute applies to, is enforced and is performed on the enclave. The fact that the union security agreement was ratified and negotiated off the federal enclave does not void its application since the state laws which the plaintiffs have relied on do not by their very terms undertake to proscribe contract negotiations leading to an agency shop but only the end product of those negotiations—the enforcement and application of an agency shop agreement. Thus this court concludes that since the union security agreement is enforced on and controls employment activities on a federal enclave, then that agreement should be subject to and controlled exclusively by federal law rather than state law. Pacific Coast Dairy, Inc. v. Department of Agriculture, 318 U.S. 285, 63 S.Ct. 628, 87 L.Ed. 761 (1943); Surplus Trading v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091 (1933). Under federal law the union security agreement is valid pursuant to the terms of National Labor Relations Act, 29 U.S.C. § 151 et seq.; Gray v. Gulf, Mobile & Ohio Railroad Co., 429 F.2d 1064 (5th Cir. 1970), cert. denied 400 U.S. 1001, 91 S.Ct. 461, 27 L.Ed.2d 451 (1971).

### III. *Title VII Claim*

Plaintiffs' second challenge to the union security agreement is that it discriminates against them in the exercise of their religious practices and observances as defined in § 701(j) of the Civil Rights Act of 1964 and as amended by the Equal Employment Opportunity Act of 1972. 42 U.S.C. 2000e–5(f). Plaintiffs have complied with the administrative requirements of the Act by filing a charge of employment discrimination with Equal Employment Opportunity Commission (EEOC) and there was an attempt to conciliate the issue that the defendants discriminated against the plaintiffs in the exercise of their religious practices and observances. The defendants urge that the Title VII claim is premature since the Equal Employment Opportunity Commission has yet to issue a notice to sue. The district director has issued a notice to sue but it is asserted that he is without statutory authority to make a determination of employment discrimination or to issue a notice to sue. The defendants also urge that the plaintiffs should first exhaust

the union grievance procedure before they pursue their claims in federal court.

■ The fact that the deputy director of the EEOC issued the notice to sue rather than the commission is of no significance to this court's jurisdiction since the commission could properly delegate this clerical task to any of its subordinates. Stone v. EDS Corp., 351 F.Supp. 340 (N.D.Cal.1972). Moreover the court is of the opinion that the plaintiffs need not first exhaust the union grievance procedure before pursuing their Title VII claim. Plaintiffs are not asserting any contractual rights as the basis for this action, but are asserting a statutory right against religious discrimination and therefore they need only to comply with the procedures for relief provided in that statute. King v. Georgia Power Co., 295 F.Supp. 943 (N.D. Ga.1968); Dent v. St. Louis-San Francisco, 265 F.Supp. 56 (N.D.Ala.1967) re'vsd on other grounds, 406 F.2d 399 (5th Cir. 1969); see, Alexander v. Gardner Denver Co., 415 U.S. 36, 94 S. Ct. 1011, 39 L.Ed.2d 147 (1974).

■■ Having considered the merits of plaintiffs' Title VII claim, this court is of the opinion the union security agreement in dispute does not discriminate against the plaintiffs in the exercise of their religious beliefs and observances. The union dues exacted from the plaintiffs are merely a "tax" to support the collective bargaining activities from which the plaintiffs have obviously benefited. Railway Employee's Department, AFL v. Hanson, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956); International Ass'n of Machinists v. Street, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961). Moreover, plaintiffs have not been asked to subscribe to any tenets or doctrines of unionism or to engage in any strikes or violence against their employers. They have merely been requested to pay their share of the cost of the collective bargaining which has resulted in direct financial benefits and job security to them. Gray v. Gulf, Mobile & Ohio Railroad Co., 429 F.2d 1064 (5th Cir. 1970), cert. denied 400 U.S. 1001, 91 S.Ct. 461, 27 L.Ed.2d 451 (1971). To urge that by paying the equivalent of union dues they are supporting violence against their neighbors is as specious as urging that the plaintiffs contribute to violence against their neighbors by performing their occupational task—the assembly and manufacture of component parts to military fighter aircraft.[2] This court being of the opinion that there being no conflict between the plaintiffs' religious beliefs and the union security agreement, it is thus unnecessary for this court to direct General Dynamics to accommodate the plaintiffs by exempting them from paying their share of the cost of the collective bargaining activities under the union security agreement.

IV. *General Dynamics' Indemnity Claim*

General Dynamics has also filed a cross claim against the defendant unions for reasonable attorney's fees incurred by General Dynamics because of plaintiffs' claims challenging the union security agreement. The basis for this claim is § 11 of article two of the agreement which provides that the defendant unions

".  .  . will defend, save, hold harmless and indemnify the Company from any and all claims, demands, suits or any other forms of liability that shall arise out of the execution, placing in effect or carrying out of the terms of this Article by the Company."

Article two is the union security article which established the agency shop challenged by the plaintiffs.

■■ As a general rule, unless an indemnity provision provides otherwise,

---

2. Moreover it could be argued that the union security agreement promotes industrial harmony and lessens the possibility of violence by providing an orderly procedure of resolving any disputes between an employer and its employees.

an indemnitee is entitled to recover against the indemnitor reasonable attorney's fees and expenses incurred in defending the indemnified claim. A. C. Israel ·Commodity Co., Inc., v. American West African Line, 397 F.2d 170 (3d Cir. 1968, cert. denied, 393 U.S. 978, 89 S.Ct. 446, 21 L.Ed.2d 439 (1969); Garcia v. Sky Climber, Inc., 470 S.W.2d 261 (Tex.Civ.App.—Houston [1st Dist.] 1971 writ ref'd n. r. e.). Having given notice of its intent to hold the indemnitor liable by filing a cross action against the defendant unions, General Dynamics is thus entitled to recover $7,500 for attorney fees and expenses incurred by General Dynamics in defending this cause of action. These fees and expenses are fair and reasonable and were necessarily incurred by General Dynamics in defense of this suit.

## V. *Conclusion*

The foregoing shall constitute this court's findings of fact and conclusions of law. The defendants are hereby ordered to submit to this court a judgment, approved as to form by the plaintiffs, and consistent with the foregoing.