Robert B. LORD, Charles E. Brown, Ralph M. Coletti, J. H. Figgatt, Fred W. Griffis, William C. Hay, Melvin R. Patrick, and A. R. Wagner, Plaintiffs,

v.

LOCAL UNION NO. 2088, IBEW and RCA International Service Corporation, Defendants.

No. 79–72–ORL–Civ–Y.

United States District Court, M. D. Florida, Orlando Division.

Nov. 29, 1979.

Christopher A. Detzel, Akerman, Senterfitt & Eidson, Orlando, Fla., and David T. Bryant, National Right to Work Legal Defense Foundation, Fairfax, Va., for plaintiffs.

Frank E. Hamilton, III, Hamilton & Douglas, P. A., Tampa, Fla., for defendant Local Union No. 2088.

Peter W. Zinober, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Fla., for defendant RCA Intern. Service Corp.

## MEMORANDUM DECISION

GEORGE C. YOUNG, Chief Judge.

Plaintiffs, present or former employees of defendant RCA International Service Corporation (hereinafter referred to as "RCA"), have filed this lawsuit against RCA and Local Union No. 2088, International Brotherhood of Electrical Workers, AFL–CIO (hereinafter referred to as "the Union"), under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and the federal declaratory judgment statutes, 28 U.S.C. §§ 2201 and 2202. They allege that as of the time of the amended complaint, they were members of a technical and plant clerical bargaining unit covered by a collective bargaining contract negotiated between RCA and the Union, effective September 1, 1978, governing the unit's wages, hours and conditions of employment. Plaintiffs further allege that the Union, as their bargaining representative, on January 16, 1979, entered into a union security agreement with RCA. They complain that this agreement is prohibited by Article I, Section 6 of the Constitution of the State of Florida,[1] as well as *Fla.Stat.* § 447.03 [2] (hereinafter collectively referred to as "the

---

**1.** *Fla.Const.* Art. I, § 6, provides:

The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization. The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged. Public employees shall not have the right to strike.

**2.** *Fla.Stat.* § 447.03 provides:

Employees shall have the right to self-organization, to form, join, or assist labor unions or labor organizations or to refrain from such activity, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid of protection.

Florida right-to-work civil laws"). They also allege that the agreement violates *Fla. Stat.* § 447.14,[3] a misdemeanor provision, which incorporates *Fla.Stat.* § 447.03 by reference (hereinafter collectively referred to as "the Florida right-to-work criminal statutes"). Plaintiffs also seek reimbursement of all monies paid to the Union by plaintiffs pursuant to the agreement.

Defendants deny that the January 16 union security agreement is prohibited by the Florida right-to-work civil laws or the Florida right-to-work criminal statutes, and further assert that these laws are inapplicable in this case because the vast majority of employees in the collective bargaining unit work on the federal enclaves of Patrick Air Force Base and Cape Canaveral Air Force Station.

Plaintiffs also claim that the Union breached its duty of fair representation to them by entering into the union security agreement, and that RCA, as a party to the agreement, participated in this breach of duty and is therefore jointly liable for it. This claim is also grounded on Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

Following the filing of an amended complaint, the Court entered an Order on May 31, 1979, pursuant to a joint motion and stipulation of all the parties which, *inter alia*, deferred rulings on the Union's motions to dismiss and to strike, and accepted the schedule for submission of the legal issues herein for determination on cross motions for summary judgment on stipulated facts.

A Joint Stipulation As To Facts, Authenticity of Documents And Agreement With Regard to Applicable Issues of Law was thereupon filed by the parties on July 2, 1979. The Stipulation incorporates certain pertinent documents and expresses the parties' agreement as to their authenticity, as well as to certain applicable issues of law. This Stipulation also expresses the parties' belief that the material facts required for complete and final adjudication of the instant controversy are incorporated into this Stipulation.

This Memorandum Decision will set forth the Court's ruling on the parties' cross-motions for summary judgment.

### I. *The Facts.*

The parties have stipulated to the material facts in this controversy. These stipulated facts are set forth in the following paragraphs.

All plaintiffs, with the exception of plaintiff Patrick, are presently employed by RCA. Patrick was employed by RCA until April 1, 1979, when he was transferred to the RCA Service Company. He is now working on the RCA Geodss Contract in Redondo Beach, California.

RCA is a Delaware corporation with its principal place of business in New York, New York. It operates and maintains tracking and instrumentation equipment which gather and analyze scientific, engineering and flight test data on the performance of guided missiles launched from Cape Canaveral for research and development purposes. Its employees work at a number of different installations in Brevard County, Florida, including the Kennedy Space Center, the Cape Canaveral Air Force Station, and Patrick Air Force Base.

The Union was certified by the National Labor Relations Board as bargaining representative for a unit of RCA technical and plant clerical employees on March 26, 1974. Following Board certification the Union and RCA entered into several collective bargaining agreements. The most recent agreement between RCA and the Union concerning the technical and plant clerical employees became effective September 1, 1978.

The recognition clause of the September 1, 1978 agreement, which is set forth as Section 1.01, defines the scope of the bar-

---

**3.** *Fla.Stat.* § 447.14 provides:

Any person or labor organization who shall violate any of the provisions of this chapter

shall be guilty of a misdemeanor of the second degree, punishable as provided in § 775.082 or § 775.083.

gaining unit. As this clause indicates, the Union represents RCA technical and plant clerical employees at Patrick Air Force Base, Cape Canaveral Air Force Station, and the Kennedy Space Center.[4]

Plaintiffs, Lord, Colletti, Figgatt, Griffis, Hay and Wagner are presently members of the technical and plant clerical bargaining unit. Plaintiff Patrick was a member of this bargaining unit until transferred out of the unit on February 12, 1979. As indicated above, Patrick was later transferred from RCA to another operation of RCA's parent corporation. Plaintiff Brown was a member of this unit until February 16, 1979 when he was transferred out of the unit.

The primary work site of plaintiffs Lord, Colletti, Griffis, Hay and Wagner is Cape Canaveral Air Force Station. Plaintiff Figgatt's primary work site is Patrick Air Force Base. Plaintiff Brown worked at Cape Canaveral Air Force Station while employed in the collective bargaining unit. Plaintiff Patrick worked at Patrick Air Force Base while employed in the collective bargaining unit.

As of the date the collective bargaining agreement was amended, January 16, 1979, there were one hundred and forty-seven (147) employees in the technical and plant clerical bargaining unit. Of these employees, fifteen (15) were administratively assigned to and had a primary work situs of the Kennedy Space Center; forty-four (44) were administratively assigned to and had a primary work situs of Cape Canaveral Air Force Station; and eighty-eight (88) were administratively assigned to Patrick Air Force Base. Of the eighty-eight (88) employees administratively assigned to Patrick

Air Force Base, eighty-six (86) had a primary work situs of Patrick Air Force Base, and two (2) had a primary work situs of the Malibar Test Site near Melbourne, Florida. The parties agree that the Malibar Test Site is not on lands ceded to the United States.

As of January 16, 1979, all fifteen (15) of the technical and plant clerical employees assigned to Kennedy Space Center in the unit were Union members. Thirty-seven (37) of the forty-four (44) employees assigned to Cape Canaveral Air Force Station were Union members. Eighty-three (83) of the eighty-eight (88) employees assigned to Patrick Air Force Base in the bargaining unit were likewise Union members on this date. The total of eighty-three (83) Union members includes the two (2) employees at the Malibar Test Site.

The collective bargaining agreement between the Union and RCA applies to all employees in the bargaining unit, and contains provisions whereby employees may exercise their seniority within contractual seniority groups and be awarded jobs for which they are qualified, without distinction as to whether the job is at Kennedy Space Center, Cape Canaveral or Patrick Air Force Base.

On January 16, 1979, RCA and the Union agreed to an amendment to their collective bargaining agreement. This amendment provided as follows:

> Section 3.04. UNION SHOP. It shall be a condition of employment that all employees of the Company covered by this Agreement who are members of the Union in good standing on the effective or execution date of this Agreement,

---

**4.** Section 1.01 of the collective bargaining contract reads as follows:

> Section 1.01. EXCLUSIVE REPRESENTATION. Pursuant to the National Labor Relations Board Certification in Case No. 12–RC–4470, Unit A–1, the Company recognizes the Union as the sole and exclusive collective bargaining agency and representative, with respect to rates of pay, salaries, hours, and other conditions of employment, for all employees in occupational classifications listed in Schedule A of this Agreement, at the Air Force Eastern Test Range at Patrick Air

> Force Base, Cape Canaveral Air Force Station, John F. Kennedy Space Center (NASA) and other Florida mainland satellite locations as such work is assigned to the Company's Missile Test Project by its prime contractor for these locations, but EXCLUDING: All Office Clerical, Administrative, and Professional employees; all employees represented by other unions and all employees permanently assigned Down Range; all Watchmen and Guards; all Managers, Leaders, and other supervisors as defined in the Labor Management Relations Act, as amended.

whichever is later, shall remain members in good standing and those who are not members on the effective or execution date of this Agreement, whichever is later, shall on the thirty-first (31st) day following the effective or execution date of this Agreement, whichever is later, become and remain members in good standing in the Union. It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its effective or execution date, whichever is later, shall on the thirty-first (31st) day following the beginning of each employment, become and remain members in good standing in the Union.

In negotiating and agreeing to the January 16, 1979 amendment to the collective bargaining agreement, RCA and the Union specifically relied upon the following decisions: *Oil, Chemical, and Atomic Workers, International Union v. Mobil Oil Corp.,* 426 U.S. 407, 96 S.Ct. 2140, 48 L.Ed.2d 736 (1976); *King v. Gemini Food Services, Inc.,* 562 F.2d 297 (4th Cir. 1977) *cert. denied,* 434 U.S. 1065, 98 S.Ct. 1242, 55 L.Ed.2d 766 (1978); *King v. Gemini Food Services, Inc.,* 438 F.Supp. 964 (E.D.Va.1976), *aff'd,* 562 F.2d 297 (4th Cir. 1977), *cert. denied,* 434 U.S. 1065, 98 S.Ct. 1242, 55 L.Ed.2d 766 (1978); *Vincent v. General Dynamics Corp.,* 427 F.Supp. 786 (N.D.Tex.1977); and *Cooper v. General Dynamics,* 378 F.Supp. 1258 (N.D.Tex.1974), *rev'd on other grounds,* 553 F.2d 163 (5th Cir. 1976). RCA and the Union also relied upon two (2) letters from the Attorney General of the State of Florida, the Hon. Robert L. Shevin, to the Hon. David L. Barrett, Member of the Florida House of Representatives, District 44, dated July 14, 1978 and August 25, 1978. These letters express the Attorney General's opinion that the Florida right-to-work laws are not enforceable on Cape Canaveral Air Force Station and Patrick Air Force Base, respectively.

Pursuant to the amendment to the collective bargaining agreement, either RCA or the Union notified each of the plaintiffs by January 19, 1979, that in the event they remained in the bargaining unit, they would be required to join the Union or to pay the equivalent of monthly dues to the Union commencing March 1, 1979, as a condition of continued employment.

All of the plaintiffs who remained in the unit decided not to join or rejoin the Union. Instead, they elected to pay the Union a sum equivalent to monthly dues. Thus, each plaintiff remaining in the unit has paid the Union $16.00 a month since March, 1979.

None of the plaintiffs remaining in the unit has paid the Union an initiation fee since January 16, 1979, and unless they elect to become members of the Union, they will not be required to do so.

The plaintiffs remaining in the unit have not, and will not be required to become members of the Union.

Neither plaintiff Brown nor plaintiff Patrick has paid any money to the Union since January 16, 1979.

No employee in the technical and plant clerical unit has ever been discharged for refusing to pay the Union a sum equivalent to Union dues.

Kennedy Space Center is located on land leased by the United States. The land on which Kennedy Space Center is located has not been ceded by the State of Florida to the United States.

The land on which Cape Canaveral Air Force Station is located has been ceded to the United States by the State of Florida. The deed of cession, dated January 25, 1955, is signed by Governor LeRoy Collins. Under the terms of the deed, exclusive jurisdiction over the ceded lands is granted to the United States, although concurrent jurisdiction is reserved for service of civil and criminal process. The cession was accepted by the United States by a letter dated October 18, 1955, signed by James H. Douglas, Under Secretary of the Air Force.

Patrick Air Force Base is also located on land ceded to the United States by the State of Florida. The deeds of cession are dated November 27, 1939, June 22, 1940 and November 22, 1940. All of the deeds were signed by Governor Fred P. Cone. Each

deed grants exclusive jurisdiction over the ceded lands to the United States, with concurrent jurisdiction reserved for service of civil and criminal process. The cessions were accepted by the United States by a letter of March 4, 1940, signed by Lewis Compton, Acting Secretary of the Navy, by a letter of July 17, 1940, signed by Frank Knox, Secretary of the Navy, and by a letter of December 10, 1940, signed by James Forrestal, Secretary of the Navy, respectively.

## II. *The Court has Jurisdiction over this Controversy.*

RCA is an "employer" within the contemplation of the National Labor Relations Act, 29 U.S.C. § 152(2). The Union is a "labor organization" within the contemplation of the National Labor Relations Act, 29 U.S.C. § 152(5). All of the plaintiffs are "employees" within the contemplation of the National Labor Relations Act, 29 U.S.C. § 152(3). Thus, all plaintiffs are entitled to the rights, privileges and protections specifically guaranteed by the National Labor Relations Act, 29 U.S.C. § 157. Plaintiffs in this action are employed in an industry affecting commerce within the contemplation of 29 U.S.C. §§ 152(6) and (7), as well as 29 U.S.C. § 185.

■ Members of a bargaining unit can sue under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and the federal declaratory judgment statutes, 28 U.S.C. §§ 2201 and 2202, to obtain a declaratory judgment as to whether a specific clause of a collective bargaining agreement affecting the terms and conditions of their employment is null, void and unenforceable. *West Point-Pepperell, Inc. v. Textile Workers Union,* 559 F.2d 304 (5th Cir. 1967). The Fifth Circuit has specifically held that a district court may entertain an action seeking a declaratory judgment that an agency shop clause in a collective

bargaining agreement violates state right-to-work legislation. *Mobil Oil Corp. v. Oil, Chemical and Atomic Workers International Union,* 483 F.2d 603, 607 (5th Cir. 1973), *rev'd on other grounds,* 504 F.2d 272 (5th Cir. 1974) (en banc), *rev'd,* 426 U.S. 407, 96 S.Ct. 2140, 48 L.Ed.2d 736 (1976). Accordingly, I conclude that this Court has jurisdiction over plaintiffs' claim for a declaratory judgment that the union security agreement between RCA and the Union is void and unenforceable. The Court also has jurisdiction over the plaintiffs' breach of duty of fair representation claim against both RCA and the Union, pursuant to Section 301 of the Labor Management Relations Act. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

## III. *Patrick Air Force Base and Cape Canaveral Air Force Station are Federal Enclaves.*

Article I, Section 8, Clause 17 of the Constitution of the United States gives the United States the power to acquire lands for certain specified uses from the various states and to exercise "exclusive legislation" over such lands where the acquisition is with the consent of the state legislature.[5]

■ Lands which are ceded to the United States by the states pursuant to Clause 17 of the Constitution are known as federal enclaves. *Cooper v. General Dynamics,* 378 F.Supp. at 1261. Since "exclusive legislation", as that term is used in Clause 17, is equivalent to "exclusive jurisdiction", *Surplus Trading Co. v. Cook,* 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091 (1930); *Mater v. Holley,* 200 F.2d 123, 124 (5th Cir. 1952); *United States v. Cornell,* 25 F.Cas. 646, 648 (D.R.I.1819) (Story, J.), the United States exercises exclusive jurisdiction over federal enclaves unless the deed of cession provides to the contrary, or unless the cession is not accepted by an authorized officer of the

---

5. Clause 17 provides:

The Congress shall have power . . . . To exercise exclusive Legislation in all cases whatsoever, over [the District of Columbia], and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same Shall be, for the Erection of Forts, Magazines, Arsenals, Dock-Yards, and other needful Buildings . . . . :

United States government as required by 40 U.S.C. § 255.[6]

 In the present case it is clear, and the parties do not dispute, that Patrick Air Force Base and Cape Canaveral Air Force Station are federal enclaves over which the United States possesses exclusive jurisdiction. The deeds of cession referred to above unequivocally grant exclusive jurisdiction over the ceded lands to the United States. The mere retention of concurrent jurisdiction by the State of Florida for service of process does not affect this conclusion. *United States v. State Tax Commission of Mississippi*, 412 U.S. 363, 371–72, 93 S.Ct. 2183, 37 L.Ed.2d 1 (1973). The cessions were all made with the consent of the Florida Legislature, which is given by *Fla. Stat.* § 6.04[7] when a deed of cession is signed by the Governor of the State, as was the case here. Finally, all of the cessions were accepted by authorized officers of the United States government, as required by 40 U.S.C. § 255.

## IV. *The Enforceability of the Union Security Agreement.*

The Court must now examine the contentions of the parties as to the enforceability of the union security agreement. Initially, it shall be noted that the technical and plant clerical employees in the bargaining unit are employed at three geographically separate locations: Kennedy Space Center; Patrick Air Force Base; and Cape Canaveral Air Force Station. Thus analysis of the enforceability of the union security agreement is necessarily fragmented. The plaintiffs' claim with regard to Kennedy Space Center, however, can readily be disposed of.

**6.** 40 U.S.C. § 255 provides in pertinent part:
Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department· or independent establishment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such lands or interests as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted.

**7.** *Fla.Stat.* § 6.04 provides:
Jurisdiction over such lands; now ceded to the United States.—Whenever the United States shall contract for, purchase or acquire any land within the limits of this state for the purposes aforesaid, in either of the modes above mentioned and provided, or shall hold for such purposes lands heretofore lawfully acquired or reserved therefor, and shall desire to acquire constitutional jurisdiction over such lands for said purposes, the Governor of this state may, upon application made to him in writing on behalf of the United States for that purpose, accompanied by the proper evidence of said reservation, purchase, contract or acquisition of record, describing the land sought to be ceded by convenient metes and bounds, thereupon, in the name and on behalf of this state, cede to the United States exclusive jurisdiction over the land so reserved, purchased, or acquired and sought to be ceded; the United States to hold, use, occupy, own, possess, and exercise said jurisdiction over the same for the purposes aforesaid, and none other whatsoever; provided, always, that the consent aforesaid is hereby given and the cession aforesaid is to be granted and made as aforesaid, upon express condition that this state shall retain a concurrent jurisdiction with the United States in and over the land or lands so to be ceded, and every portion thereof, so far as all process, civil or criminal, issuing under authority of this state, or of any of the courts or judicial officers thereof may be executed by the proper officers thereof, upon any person amenable to the same, within the limits and extent of lands so ceded, in like manner and to like effect as if this law had never been passed; saving, however, to the United States security to their property within said limits and extent, and exemption of the same, and of said lands from any taxation under the authority of this state while the same shall continue to be owned, held, used and occupied by the United States for the purposes above expressed and intended, and not otherwise.

A. *Plaintiffs Lack Standing to Assert any Violation of the Rights of the Unit Employees Working at Kennedy Space Center.*

Plaintiffs argue that the union security agreement is unenforceable with regard to those unit employees working at Kennedy Space Center. However, none of the plaintiffs work at this location.

■ Plaintiffs may seek redress for injuries done to them, but may not seek redress for injuries done to others. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Hanson v. Denckla*, 357 U.S. 235, 244, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). They therefore lack standing to assert that the union security agreement is void and unenforceable as to those employees whose job situs is Kennedy Space Center. As to Kennedy Space Center, therefore, the Court need not reach the merits as to the enforceability or non-enforceability of the union security agreement.

B. *The Union Security Agreement is Unenforceable on the Federal Enclave of Cape Canaveral Air Force Station.*

■ It has already been noted that the United States possesses exclusive jurisdiction over the federal enclave of Cape Canaveral Air Force Station. This means that only federal law is applicable on the enclave. *Mater v. Holley*, 200 F.2d at 127.

■ However, the federal law of every enclave includes state law which was in force at the time of the cession, where such state law is not inconsistent with federal law or policy. *Pacific Coast Dairy, Inc. v. Department of Agriculture of California*, 318 U.S. 285, 294, 63 S.Ct. 628, 87 L.Ed. 761 (1943); *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596 (1940); *Chicago, Rock Island and Pacific Railway Co. v. McGlinn*, 114 U.S. 542, 5 S.Ct. 1005, 29 L.Ed. 270 (1885). This assures that no new federal enclave, regardless of size, will be left without laws. *Mater v. Holley*, 200 F.2d at 124. However, laws of the state adopted after the cession are without any force or effect on the federal enclave. *Pacific Coast Dairy, Inc. v. Department of Agriculture of California*, 318 U.S. at 294, 63 S.Ct. 628, 87 L.Ed. 761; *Vincent v. General Dynamics Corp.*, 427 F.Supp. at 794–95.

The Florida right-to-work laws were fully effective a number of years before the lands comprising Cape Canaveral Air Force Station were ceded to the United States.[8] It would therefore appear that those laws could have been incorporated into the federal law of the enclave at the time of the cession unless these right-to-work laws conflict with federal law or policy. Plaintiffs submit that no such conflict exists, relying upon the language of Section 14(b) of the National Labor Relations Act, 29 U.S.C. § 164(b).[9] Plaintiffs contend that federal policy is one of "benign neutrality" which neither favors nor disfavors compulsory unionism.

Defendants urge that such a conflict exists. They first assert, relying on *Oil, Chemical and Atomic Workers International Union v. Mobil Oil Corp.*, 426 U.S. 407, 96 S.Ct. 2140, 48 L.Ed.2d 736 (1976), that federal policy favors the union or agency shop,

---

**8.** The Florida Constitution of 1885 was amended in 1944 to provide:

The right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union, or labor organization; provided that this clause shall not be construed to deny or abridge the right of employees by and through a labor organization or labor union to bargain collectively with their employer. This provision was in effect in 1955 when jurisdiction over Cape Canaveral was ceded to the United States.

**9.** In support of their position that Florida right-to-work laws preclude enforcement of union security agreements at Cape Canaveral, plaintiffs also made arguments based upon the federal Assimilative Crimes Act and upon the theory that Section 14(b) is an express or implied Congressional delegation of authority to the states to promulgate right-to-work legislation effective on federal enclaves. Because of my holding as to Cape Canaveral, I will defer discussion of these other arguments to the section dealing with Patrick Air Force Base, *infra*.

and that this policy conflicts with the Florida right-to-work laws. In the alternative, they argue that the Florida right-to-work laws conflict with a federal policy favoring unrestricted collective bargaining.

This raises the issue as to what, if any, is the federal policy regarding union security agreements. With regard to this issue the parties to this case are one hundred eighty degrees in disagreement.

■ After carefully reviewing the National Labor Relations Act, as amended, particularly the proviso to section 8(a)(3) and section 14(b) [10] thereof, the Court concludes that there is not a federal policy in favor of union security agreements, but rather a federal policy which permits an agreement between an employer and the bargaining unit representative for an agency shop.[11] In the absence of this permissive legislation, such an agreement could have been, and apparently was construed to be illegal.

■ There is then, a national federal labor policy that an agency shop is not illegal. On the other hand, because section 14(b) is also a part of federal law, it does not appear to the Court that there is a conflict between a state right-to-work law and federal policy. The Court finds therefore that the Florida right-to-work civil laws are not in conflict with any such federal law or policy. Accordingly, with respect to Cape Canaveral Air Force Station, as the Florida right-to-work civil laws had been passed and were in effect at the time of the

deed of cession to the United States, and absent specific Congressional legislation to the contrary, the Court holds that said right-to-work laws are clearly applicable thereon.[12]

Defendants' final argument is that the "primary work situs" of the unit is Patrick Air Force Base, since a majority of the unit employees work at that location, and that therefore the enforceability of the union security agreement at Cape Canaveral should be governed by the determination of whether the agreement is lawful or unlawful at Patrick. Defendants rely here on the Supreme Court decision in *Mobil Oil* and the district court's opinion in the *Vincent* case.

Although both the *Mobil Oil* and *Vincent* courts utilized a primary work situs approach, both cases are distinguishable on their facts. In *Mobil Oil* all of the affected employees spent most of their working hours on the high seas, as opposed to the right-to-work State of Texas. In *Vincent*, all of the affected employees worked at the same geographic location, in facilities that were mostly on, but partly off, the federal enclave.

■ Here, however, the unit employees work in three separate geographical locations, each of which is the primary work situs of the employees working there. Thus the job situs of the union employees employed at Cape Canaveral Air Force Station is Cape Canaveral, not Patrick Air Force Base. Under such circumstances the de-

---

**10.** Section 14(b) of the National Labor Relations Act, which was added by the Taft-Hartley Amendments of 1947, reads as follows:

Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law.

**11.** An employee cannot be required to become a full-fledged member of the union under the federal act. *NLRB v. Hershey Foods Corp.*, 513 F.2d 1083 (9th Cir. 1975); *Union Starch and Refining Co. v. NLRB*, 186 F.2d 1008 (7th Cir.), *cert. denied*, 342 U.S. 815, 72 S.Ct. 30, 96 L.Ed. 617 (1951).

**12.** However, this same rationale does not extend to the inclusion of the right-to-work criminal provisions into the law of this enclave. As more fully discussed in Part IV, Section C, of this opinion, *infra*, the federal policy of neither endorsing nor disapproving of union security agreements is clearly in conflict with a state law providing criminal sanctions for noncompliance with its right-to-work laws. For the reasons discussed *infra*, therefore, the Court concludes that the Florida right-to-work criminal statutes were not also incorporated into the body of federal law applicable to Cape Canaveral Air Force Station.

fendants' argument fails; the union security agreement can plainly be held enforceable at one location and not at another, and the fact that most of the unit employees work at Patrick Air Force Base is not controlling.

Defendants' attempts to show a conflict between federal policy and the Florida right-to-work civil laws have not succeeded. Their primary work situs theory is also unpersuasive. The Court therefore holds that the Florida right-to-work civil laws were incorporated into the federal law governing Cape Canaveral Air Force Station at the time of the cession, and that the union security agreement between RCA and the Union is unenforceable as to those unit employees working at that location.

> C. *The Union Security Agreement is Enforceable on the Federal Enclave of Patrick Air Force Base.*

█ Patrick Air Force Base is located on lands already ceded to the United States by 1940. The Florida right-to-work laws were not promulgated until 1943. Therefore, applying the principles discussed in the preceding section, it would appear that these laws are without force or effect on the federal enclave of Patrick Air Force Base. *United States v. State Tax Commission of Mississippi*, 412 U.S. at 369–70, 93 S.Ct. 2183, 37 L.Ed.2d 1; *Paul v. United States*, 371 U.S. 245, 268, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963); *Pacific Coast Dairy v. Department of Agriculture of California*, 318 U.S. at 294, 63 S.Ct. 628.

However, plaintiffs advance two additional theories to support their claim that the Florida right-to-work laws are applicable on this enclave. The first is grounded on Section 14(b) of the National Labor Relations Act and the second rests on the Assimilative Crimes Act.

█ It is plaintiffs' position that Section 14(b) is an absolute delegation of power to the legislatures of the various states to enact right-to-work laws enforceable not only on the sovereign lands of the state, but also on federal enclaves located within the state over which the United States possess-

es exclusive jurisdiction. Under this theory the Florida right-to-work laws would be applicable on both Patrick Air Force Base and Cape Canaveral Air Force Station merely by virtue of Section 14(b).

This contention is not persuasive. Section 14(b) cannot be read so broadly.

Plaintiffs' Assimilative Crimes Act theory is also unmeritorious. That statute, 18 U.S.C. § 13, provides:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

█ Congress can provide, of course, that state legislation is applicable on federal enclaves. One such statute is the federal Assimilative Crimes Act. The purpose of the Assimilative Crimes Act is to fill any gaps in federal criminal law governing federal enclaves by a wholesale adoption of the criminal laws of the state in which the enclave is located. However, as one might expect, federal courts have traditionally held that state criminal statutes in conflict with federal law or policy are not adopted pursuant to the Act, because such laws do not serve the purpose of filling gaps in federal law. *Williams v. United States*, 327 U.S. 711, 717–24, 66 S.Ct. 778, 90 L.Ed. 962 (1946); *James Stewart & Co., Inc. v. Sadrakula*, 309 U.S. at 100–101, 60 S.Ct. 431, 84 L.Ed. 596; *King v. Gemini Food Services, Inc.*, 438 F.Supp. at 966; *Vincent v. General Dynamics Corp.*, 427 F.Supp. at 800.

It has already been noted that *Fla.Stat.* § 447.14 makes it a misdemeanor for a union and an employer to violate *Fla.Stat.* § 447.03 by requiring an employee, through a union security agreement, to pay an amount equivalent to dues to a labor organ-

ization. Plaintiffs contend that these Florida statutes are applicable on Patrick Air Force Base by virtue of the Assimilative Crimes Act.

As previously stated, it is the Court's conclusion that federal policy, as set forth in the National Labor Relations Act, neither endorses nor disapproves of union security agreements, and thus such agreements are not illegal under federal law. In the opinion of the Court, therefore, it would be inconsistent and in conflict with such federal policy to apply a state law on a federal enclave which makes it a crime for an employer and a union to agree to such a union security clause. In light of such conflict between the state criminal law and federal policy, therefore, the Court holds that the Florida right-to-work criminal statutes are not incorporated into the body of federal law governing Patrick Air Force Base through the Assimilative Crimes Act. See *King v. Gemini Food Services, Inc.*, 562 F.2d at 298; *King v. Gemini Food Services, Inc.*, 438 F.Supp. at 966; *Vincent v. General Dynamics Corp.*, 427 F.Supp. at 799–800.

The Court holds that neither the Florida right-to-work civil laws, nor the Florida right-to-work criminal statutes, are applicable on Patrick Air Force Base, either through the mechanism of the Assimilative Crimes Act, or by any Section 14(b) delegation theory. Therefore, the union security agreement is enforceable as to the unit employees working at Patrick Air Force Base.

### V. The Breach of Duty of Fair Representation Claim.

Plaintiffs claim that the Union, by entering into a union security agreement with RCA, breached its duty of fair representation to them to the extent the agreement is unenforceable under the Florida right-to-work laws. Plaintiffs also assert that RCA, by entering into the union security agreement, "aided and abetted" the union in its breach of duty and is therefore liable as well.

First, the Court is of the opinion that such duty is the obligation of the Union as distinguished from that of the employer. On the stipulated facts before the Court, the Court finds that the Union entered into the union security agreement in good faith, and that at no time acted in an arbitrary or discriminatory manner toward any of the plaintiffs. The breach of duty of fair representations claims are therefore without merit.

### VI. Damages and Attorneys' Fees.

Plaintiffs Lord, Colletti, Griffis, Hay and Wagner, all of whom work at Cape Canaveral Air Force Station, have been required to pay the Union an amount equivalent to union dues ($16.00 per month) since implementation of the union security agreement. Thus, these plaintiffs are entitled to a judgment against the Union in the amount each paid to the Union pursuant to that agreement.

Plaintiff Brown worked at Cape Canaveral Air Force Station while he was in the unit, but left the unit prior to implementation of the union security agreement. Plaintiff Figgatt works at Patrick Air Force Base. Plaintiff Patrick also worked at this location while he was in the unit, although he too never paid any money to the Union as a result of the January 16 agreement. None of these three plaintiffs are therefore entitled to damages from the Union.

All parties in this action have requested that they be awarded a reasonable attorneys' fee. These requests are denied. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

### VII. Summary Judgment.

For the foregoing reasons, the Court is of the opinion that the plaintiffs' Motion for Summary Judgment should be partially GRANTED as follows: The union security agreement, insofar as it applies to unit employees working at Cape Canaveral Air Force Station, is hereby adjudged to be void and unenforceable, and the defendants

should be permanently enjoined and restrained from enforcing or attempting to enforce the union security agreement as to any unit employee whose job situs is Cape Canaveral; and further the defendants should be adjudged jointly and severally liable for damages to the plaintiffs Lord, Colletti, Griffis, Hay and Wagner, whose job situs is Cape Canaveral Air Force Station, in the amount each has paid to the Union pursuant to such agreement.

The defendants' motions for summary judgment should be GRANTED as follows: The union security agreement insofar as it applies to unit employees working at Patrick Air Force Base, is adjudged to be enforceable; and further the claims of plaintiffs Brown, Figgatt, and Patrick should be denied.

As to Kennedy Space Center, in view of the Court's finding that the plaintiffs lack standing to assert any claim concerning the facility, the Court reaches no decision as to the enforceability or nonenforceability of the union security agreement thereat.

Except as otherwise partially granted herein, the motions for summary judgment of all parties should be denied. Each party shall bear its own costs. Separate judgment in accordance with this decision will be entered.