962 F.Supp. 1206 (1997)
Deborah OSBURN, Plaintiff,
v.
MORRISON KNUDSEN CORP., Defendant.
No. 4:95CV2442 CDP.
United States District Court, E.D. Missouri, Eastern Division.
May 22, 1997.
*1207 Kenneth H. Gibert, St. Louis, MO, for plaintiff.
Deborah Osburn, St. Peters, MO, pro se.
Dennis G. Collins, Mary Beth Ortbals, Greensfelder and Hemker, St. Louis, MO, Donald K. Murano, University City, MO, for defendant.

MEMORANDUM AND ORDER
PERRY, District Judge.
This matter is before the Court on defendant's motion for partial summary judgment on plaintiff's state-law employment discrimination claim. Plaintiff opposes the motion. Because the Court concludes that defendant is entitled to judgment as a matter of law on the undisputed facts, the motion will be granted. This matter is set for a jury trial on the remaining federal claim on the two-week docket beginning September 8, 1997 at 9:00 a.m.
Plaintiff Deborah Osburn was employed by defendant Morrison Knudsen Corporation as a temporary clerical employee. Defendant is a contractor engaged pursuant to an agreement between the U.S. Department of the Army and the Department of Energy to decontaminate the former Weldon Spring chemical plant complex, located outside St. Louis, Missouri. Plaintiff alleges that defendant denied her permanent employment based upon her age and retaliated against her for making a complaint to her supervisors about age discrimination. She brings suit under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. S § 621 et seq. (Count I), and the Missouri Human Rights Act (MHRA), Mo.Rev.Stat. §§ 213.010 et seq. (Count II).
Defendant seeks summary judgment on plaintiff's MHRA claim. Defendant contends that the Weldon Spring site is a federal enclave within the exclusive jurisdiction of Congress and that Missouri has no jurisdiction to regulate employment practices within that enclave. Plaintiff disputes defendant's characterization of the Weldon Spring site, arguing that the site reverted to Missouri's jurisdiction in 1985 because it ceased to be used for military purposes.

I. Legal Standards

In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact *1208 exists. Fed.R.Civ.P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323, 106 S.Ct. at 2552.

II. Relevant Factual Background

The federal government acquired the Weldon Spring site by direct purchase and condemnation in three transactions between 1917 and 1940. The site originally encompassed 17,239 acres. Various parcels were deeded back to departments of the state of Missouri between 1947 and 1949, with the federal government retaining just over 2,000 acres.
The Department of the Army operated the Weldon Spring Chemical Plant to produce munitions and process uranium on approximately 247 acres. In the course of operation, chemical wastes were deposited throughout the site. Responsibility for cleanup of the site was the subject of a dispute between the Departments of the Army and Energy which was resolved by a memorandum of understanding signed on February 11, 1985.
Pursuant to the 1985 agreement, the U.S. Department of the Army transferred title and custody of the Weldon Springs Chemical plant site to the Department of Energy for clean-up and decontamination. Because the land had no value in its then-current condition, the transfer was accomplished at no cost. Under the agreement, the Departments of Energy and the Army are each responsible for fifty percent of the clean-up costs. The Department of Energy is responsible for designing and implementing the clean-up plan while the Department of the Army retains the authority to comment on each phase of the plans. Paragraph 7 of the memorandum of understanding states that it does not affect "federal contractual and other rights against third parties." Morrison Knudsen was hired as the project management contractor pursuant to this agreement.
Defendant contends that the clean-up site remains a federal enclave, precluding state regulation over employment practices. Plaintiff counters that the exclusive federal jurisdiction ended in 1985 when the Department of the Army transferred control to the Department of Energy.

III. Discussion

A federal enclave is territory which has been transferred by a state through cession or consent to the United States and over which the federal government has acquired exclusive jurisdiction. See Lord v. Local Union No.2088, 481 F.Supp. 419, 425 (D.C.Fla. 1979), rev'd in part on other grounds, 646 F.2d 1057 (5th Cir.1981). The federal government acquires exclusive jurisdiction over such territory only with the consent of the state. U.S. Const. art. I, § 8, cl. 17; Paul v. United States, 371 U.S. 245, 264, 83 S.Ct. 426, 437-38, 9 L.Ed.2d 292 (1963); Miller v. Wackenhut Services, Inc., 808 F.Supp. 697, 699 (W.D.Mo.1992). The state legislature may condition the cession of jurisdiction over land acquired through condemnation. Silas Mason Co. v. Tax Comm'n, 302 U.S. 186, 203-04, 58 S.Ct. 233, 242-43, 82 L.Ed. 187 (1937). Plaintiff does not dispute that she cannot prevail on her MHRA claim if the Weldon Spring site is a federal enclave. See Miller, 808 F.Supp. at 700.
Two Missouri state statutes govern the question of federal jurisdiction over the Weldon Spring site. Section 12.030 consents to the acquisition by the United States, by purchase or condemnation, of land for sites for "customhouses, courthouses, post offices, arsenals, forts and other needful buildings required for military purposes." Mo.Rev. Stat. § 12.030. Another statute cedes exclusive jurisdiction over such lands to the federal government so long as "the United States owns the land and uses the same for the purposes set out in section 12.030." Mo.Rev. Stat. § 12.040. The parties do not dispute that in enacting these statutes, the Missouri legislature ceded jurisdiction over the Weldon Spring site to the United States government.
Plaintiff cites § 12.040 and contends that the exclusive federal jurisdiction over Weldon Spring is conditioned upon the federal government using it "for military purposes." Plaintiff further contends that, when the Department of the Army transferred custody to the Department of Energy in 1985 for decontamination, *1209 the federal government ceased to use the site for military purposes, thereby ending the conditional grant of exclusive jurisdiction.
The Attorney General for the State of Missouri addressed the question of federal jurisdiction over the Weldon Spring site on February 20, 1953. At that time, the manufacture of ordnance, the purpose for which the site had been acquired, had ceased and the site was not in use. Nonetheless, the Attorney General concluded that the site continued to be "held by the United States for military purposes if and when necessary" and, under those circumstances, § 12.040 did not operate to return jurisdiction to the state.
Plaintiff argues that the 1985 transfer of the Weldon Spring site to the Department of Energy distinguishes the present scenario from that considered by the state Attorney General in 1953. The Court determines that, for the purposes of the present law suit, the Weldon Spring site remains a federal enclave. The transfer of title was incident to the general purpose of the agreement, which was to facilitate clean-up and restoration of a tract that was of no value in its present condition. Because the site's present valueless condition is due to its past "military use," the present "use" of the land by the Department of Energy is not inconsistent with military use. Furthermore, neither party has indicated what use may be made of the site in the future, nor whether the federal government holds it for military purposes "if and when necessary."
Plaintiff next argues that, Weldon Spring's status as a federal enclave notwithstanding, defendant should not be granted summary judgment on the MHRA claim because some of the conduct of which she complains occurred outside the Weldon Spring site. Specifically, plaintiff alleges that, after she complained to her supervisors regarding alleged age discrimination, she received harassing phone calls at home. She relies on a case from the Western District of Missouri, Miller v. Wackenhut, 808 F.Supp. 697 (W.D.Mo. 1992). In that case, a plaintiff brought claims of employment discrimination occurring on a federal enclave. The district court dismissed the MHRA claim for the reasons discussed above. The court declined to dismiss plaintiff's additional claim for negligent infliction of emotional distress based upon harassing phone calls made to her home. The district court reasoned that, because the cause of action arose where plaintiff suffered the injury, and because she suffered the emotional distress in her home where she received the phone calls, the tortious conduct occurred outside the federal enclave.
The Miller court's analysis of a commonlaw tort does not aid plaintiff in the present matter. As noted above, the Miller court dismissed that plaintiff's MHRA claim on the same grounds that this Court employs today. Any cause of action arising under the MHRA occurred as a result of defendant's employment practices on the federal enclave. In addition, plaintiff has not submitted any evidence to show that the harassing conduct of which she complains is attributable to defendant.
Because the Court concludes that the Weldon Spring site remains a federal enclave, defendant is entitled to summary judgment on plaintiff's MHRA claim.
Accordingly,
IT IS HEREBY ORDERED that defendant's motion for partial summary judgment [# 28] is granted, and plaintiff shall take nothing on Count II of her complaint.
A separate judgment in accordance with this memorandum and order is entered this same date.